

# **Pohlman**USA®
## Court Reporting and Litigation Services

Patrick A. Fogerty

July 15, 2021

Patrick A. Fogerty

vs.

Quiktrip Corporation

**Plaintiff's MIOMSJ
Exhibit 1**

EXAMINATION BY MS. RICKS

IT IS HEREBY STIPULATED AND AGREED by and between Counsel for the Plaintiffs and Counsel for the Defendants, that this deposition may be taken by shorthand by Christopher C. Wiegers, a Certified Court Reporter, and afterwards transcribed into typewriting.

0-0-0

\* \* \* \* \* \* \* \* \*

PATRICK A. FOGERTY,

Of lawful age, having been first duly sworn to testify the truth, the whole truth, and nothing but the truth in the case aforesaid, deposes and says in reply to oral interrogatories propounded as follows:

EXAMINATION

BY MS. RICKS:

Q. Mr. Fogerty, we already introduced ourselves, but I'm Katie Ricks, and I represent QuikTrip Corporation.

We're here today because you filed a lawsuit. You're seeking damages arising from a slip and fall at QuikTrip Number 629 at 4450 Meramec Bottom Road in St. Louis, Missouri 63129 that occurred on September 2, 2020.

EXAMINATION BY MS. RICKS

off of that and stepped on the tile -- as soon as I stepped on that, you know, it flipped me backwards on my right elbow. When I was falling I was trying to like control a little bit how I landed, like playing football or whatever. I was trying to like pull my head forward a little bit or whatever. But then I struck this elbow first.

Q.   Do you remember that there was an entry mat at the store on September 2nd?

A.   Yes.

Q.   So you stated that you did notice that and walked over it?

A.   Yeah.

Q.   And would you agree that you did have an opportunity to wipe off your feet on that mat?

A.   You know, to be honest with you, I probably did wipe it just to be cautious going in there. I think I probably did for sure, yes. Because I was obeying their kind of rules there. You know what I'm saying? But like when I did fall, like I said, it just rang in my ear because the manager said -- I think it's the manager. He said I thought that if I had that rug there and whatever things he did -- he said I thought that that would be okay, but I guess next time I'll have to do something different. I was like I guess so. I mean, I fell here. I think you may have to for sure. You don't want somebody else to fall. But

EXAMINATION BY MS. RICKS

Q.      So you guys were just out running errands?

A.      Yeah.

Q.      You didn't have any appointments or specific plans for the day?

A.      No, ma'am.

Q.      And you mentioned that you went to QT to go to the ATM?

A.      Yes, ma'am.

Q.      Did you buy anything when you were inside?

A.      I don't think I did.  I left -- I think I had headed to get some milk or something when I fell I think and I kind of -- I think I blew that off maybe.  We left and I knew that I -- safety-wise, I knew that I had a file like an accident report, you know, the paperwork with it at least. That's what I did with that.

Q.      So you said you filed an accident report.  What do you mean?

A.      Well, I came back to the store, like the male -- I think he might be the manager.  He was not around.  Just there was a woman, and I told her -- I think she was the one probably that yelled to put the mask -- and she wanted to know, you know, kind of what happened in general, and I kind of told her.  And then she got out a sheet and she dated it and had me sign it, and then she took a copy and gave me a copy, and then I gave that to Bob.

EXAMINATION BY MS. RICKS

glasses, and you're wearing glasses today; right?

A.    Yes.

Q.    Are the glasses you were wearing at the time of this incident -- are those the same glasses you're wearing now?

A.    Yes, ma'am.

Q.    So is that prescription still good and current?

A.    Yes, ma'am.

Q.    Okay.  And when you guys arrived at QT -- when you -- by you guys I mean you and Joyce.

A.    Yes.

Q.    When you and Joyce arrived at QT that day, do you remember where you parked?

A.    Right in front at the handicap parking.  She has one of those handicap stickers and she used that.  That's hers, that handicap.

(Defendant's Exhibit B marked for identification.)

Q.    (By Ms. Ricks)  Okay.  Mr. Fogerty, I've handed you another photograph, which we've marked as exhibit B.  Again, we see the time stamp up in the upper left corner.

Am I correct that it says September 2, 2020?

A.    Yes.

Q.    And the time stamp is 12:51 p.m.?

A.    Yes.

Q.    Is that your vehicle sort of in the center of the

EXAMINATION BY MS. RICKS

photograph there, the gray SUV?

A.    Yes, ma'am.

Q.    And you mentioned that Joyce had parked in the accessible parking spot?

A.    Yes.

Q.    And earlier you stated that you noticed there was water on the ground when you walked in?

A.    Yes.

Q.    Can you see that in this photograph?

A.    Yes.

Q.    Do you recognize this angle from the security video footage that you said you reviewed beforehand?

A.    Yes.

Q.    So would you say this is a fair and accurate representation of what the outside of the store looked like when you walked in?

A.    Yes, ma'am.

Q.    Okay.  So is that you in the photograph nearing the door to the QuikTrip?

A.    Yes, ma'am.

Q.    You have on the red hat?

A.    Yes, ma'am.

Q.    And you're wearing kind of a greenish gray shirt?

A.    Yes, ma'am.

Q.    Okay.  And, again, if you want to refer back to

EXAMINATION BY MS. RICKS

this photograph, that's fine.

A.   Sure.

Q.   You just let me know.

A.   Yes, ma'am.

Q.   Okay.  We were just looking at the photograph of where you all had parked the car in the accessible spot.

You stated that you did notice that there was some water on the ground outside as you walked in?

A.   Yes, ma'am.

Q.   So as you walked in, did you look down at the ground as you were walking?

A.   Oh yeah.

Q.   I think earlier you stated that you had noticed it was wet, so you were being extra cautious?

A.   Sure.  Yes.

Q.   So you were looking down?

A.   Yes, ma'am.

Q.   Nothing was obstructing your view?

A.   No, ma'am.

Q.   And then as you're going in the door, do you remember kind of turning around to talk to Joyce at all as you were walking in?

A.   No, ma'am.

Q.   Okay.  Would you have any reason to dispute the security video footage if it showed you doing that?

PohlmanUSA Court Reporting
877-421-0099

61

EXAMINATION BY MS. RICKS

A.    No.  I mean -- well, hang on just a second.  I think I did.  I think I did after the fall.  I remember I think I looked back maybe.  I might have motioned for her to come at that point maybe, yeah.

Q.    And that's fine.  I know I'm asking you very detailed questions.  So if there's something that you just go gosh, I don't remember, that's okay, Mr. Fogerty.  You can tell me that.

A.    Yes, ma'am.

Q.    Can you describe where you walked as you entered the store?

A.    Well, I opened the door, like I said, and I saw the carpet on the floor there was wet.  And, like I said, the woman yelled to put my mask on.  You know, I kind of looked at her and I said sure.  And then as I was going to kind of move forward, the manager -- I think the male was standing there and he said hey, could you put your mask on, and I was like sure.  And then, you know, like I said, I was trying to move myself over to that counter to get up against that.  And then when I stepped off of that rug on that floor is when I slipped and fell straight back on my elbow.

Q.    Okay.  And I'm handing you again that Exhibit A that shows kind of right as you're walking in the store.

A.    Yes, ma'am.

Q.    And to the best of --

PohlmanUSA Court Reporting
877-421-0099

62

EXAMINATION BY MS. RICKS

MR. RADICE:  Exhibit B?

MS. RICKS:  That's the outside one.  The parking lot one is Exhibit B, and then inside of the store is A.

MR. RADICE:  Oh I thought you said walking in the store.  This is after he fell; right?  Maybe I misheard what you said.

MS. RICKS:  Yeah.  Sorry.

A.   Like you're saying after I fell -- yeah, I think I probably turned for her -- kind of motioned for her to come in for a moment.

MR. RADICE:  Sorry.

MS. RICKS:  That's okay, Bob.

Q.   (By Ms. Ricks)  You've got Exhibit A that the court reporter has marked in front of you.  If you wouldn't mind -- I'll hand you a pen.  Would you circle on the photograph about where you recall slipping?

A.   Well, like I said, as soon as I kind of stepped off -- it was with my right foot.  It was right here.

Q.   So you've circled just past that floor mat?

A.   Right.

Q.   Okay.

(Defendant's Exhibit C marked for identification.)

Q.   (By Ms. Ricks)  I've just handed you another photograph, which is a screen grab from that security video that you say you viewed.  This is the same angle as Exhibit

EXAMINATION BY MS. RICKS

Q.    (By Ms. Ricks)  Mr. Fogerty, did you understand my question when I'm asking about if there was anything blocking your view of the wet floor sign?

A.    When I was walking in like that?

Q.    Right.

A.    No.  It was sitting there.  I mean, I can't tell because I'm not in that space.  But, I mean, yeah, if it was there and I'm coming in and I see it there, I know to look around, you know, for sure.

Q.    And you had mentioned that you were being extra cautious because you had walked through that water on your way in?

A.    Yes.

Q.    And you were making sure to look in front of you carefully where you were walking?

A.    Yes, ma'am.

Q.    And you've also stated that you do see that there's a warning sign kind of directly in the path where you were walking into the store?

A.    Yes, ma'am.

Q.    Do you recall seeing any other wet floor signs other than the one that this is visible here in Exhibit C?

MR. RADICE:  And I'm going to object because -- and I'm not trying to be tricky here, but I don't think you've directly asked him if he saw it or noticed it that day.

PohlmanUSA Court Reporting
877-421-0099

66

EXAMINATION BY MS. RICKS

Because we're looking -- you're talking about the fall at one point and you're looking at the photograph at another point. So you might want to ask him that directly.

Q. (By Ms. Ricks) Mr. Fogerty, I've asked you was there anything obstructing your view of the wet floor sign that day on September 2nd?

A. No, ma'am.

Q. Do you recall seeing the wet floor sign on September 2nd?

A. I probably do.

Q. Okay. Do you recall seeing any other wet floor signs in the store that day?

A. Not that I recall. Like I said, when I stepped off of there and slipped and fell back, that's when, you know, immediately he came over, the manager. I just remember him saying, you know, I thought that if I did -- you know, had this rug here and the other things he was throwing out that everything would be cool, but he goes next time I guess I'll have to do X, Y, Z. And I was like sure.

Q. And either before you fell -- and I know this all happened very quickly.

To the best of your memory -- you don't need to hold that anymore if you don't want to. We can set it down.

A. Sure.

Q. To the best of your memory, before you fell, did

EXAMINATION BY MS. RICKS

you notice any liquid or other substance on the floor?

A.   Just -- you know, just what was on that carpet and on the tile floor itself.  I mean, I couldn't make out water or chemicals or whatever, but I just was -- you know, I knew I was just going to proceed with caution getting off the carpet over to the ATM.  And then when I stepped with my right foot, that's when it just dumped me.

Q.   I understand.  And we'll get to the more mechanics of how you fell.  We've already talked about what the manager said.  So in the interest of just kind of keeping things moving, just kind of listen to the question I'm asking and only answer that.  I'm not trying to be critical. I know that that's what you're really focused on is actually when you fell because that's the thing that's impacting you. But I want to try to get some other information, too, and get some clear answers to those questions.  Is that fair?

A.   Yes, ma'am.

Q.   So on Exhibit A you had circled about where you had fallen.  So before you fell --

A.   I would say kind of where I stepped off on the floor.  Like that would be kind of, you know, your foot kind of in that area going forward.

Q.   Right.  So in that area approximately where you've circled the photograph, do you recall seeing, before you fell, any liquid or substance on that floor?

EXAMINATION BY MS. RICKS

A.    I don't think so.

Q.    Okay.  So you don't recall --

A.    I mean, I noticed that the water was like I on that carpeting.  Like I said, I don't know what was on the tile.  Like I said, I was just moving -- you know, he was saying, you know, be careful or whatever, and I was like sure.  I was just kind of like trying to make my way off of that carpet over to the ATM machine there.

Q.    That's okay.  I'm just asking some questions to understand kind of what you remember about the incident.  So, again, we'll kind of talk more about your interaction with the manager and what you remember about actually falling in a little bit here.

A.    Okay.

Q.    So you don't recall -- you stated that you don't recall seeing any liquid or substance on the floor in that area where you've circled on Exhibit A before you fell?

A.    Well, I think -- you know, like I'm saying, the water was -- I don't know that the water liquid -- I mean, it was wet.  All I know is I saw that on the carpeting and the floor.  And that's -- I was just moving slowly.

Q.    So you've said a couple different things, and I just want to make sure I clearly understand.  We're talking about before you fell.

A.    Yes, ma'am.

EXAMINATION BY MS. RICKS

A.    I mean, there was liquid kind of everywhere.  You know, I was just trying to navigate through that.

Q.    (By Ms. Ricks)  You just said there was liquid kind of everywhere.  What do you mean by that?

A.    Well, it was on the floor there.  You know, it's all over this carpet.  You can see it's wet there, how it looks.

Q.    Mr. Fogerty, you're looking at Exhibit A, which is after you fell.

A.    Sure.

Q.    And we've already discussed your shoes were wet.

A.    Sure.

Q.    So before you fell -- perhaps you should be looking at Exhibit C if you need something to refresh your recollection.  I would rather you just answer from the best of your memory.

A.    Okay.

Q.    Do you recall seeing any liquid on the tile floor just past the mat in the location where you indicated that you slipped before you fell?  And if you do not remember seeing it, that's perfectly okay.

A.    I don't really remember totally exactly that.

Q.    Okay.

A.    And it was -- I don't remember exactly.

Q.    Okay.  It would make sense to me that you wouldn't

PohlmanUSA Court Reporting
877-421-0099

71